UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN MICHAEL CARRIER,

                                            DECISION AND ORDER

                       Plaintiff,

                                            19-CV-6139L

          v.

ANDREW SAUL,
Commissioner of Social Security,

                     Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On December 9, 2015, plaintiff, then twenty-five years old, filed an application for supplemental security income, alleging disability as of January 1, 2015. (Administrative Transcript, Dkt. #7-2 at 10). His application was initially denied. Plaintiff requested a hearing, which was held April 10, 2018 via videoconference before Administrative Law Judge ("ALJ") Eric Eklund. The ALJ issued an unfavorable decision on May 2, 2018. (Dkt. #7-2 at 10-19).That decision became the final decision of the Commissioner when the Appeals Council denied review on December 27, 2018. (Dkt. #7-2 at 1-3). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for further proceedings (Dkt. #10), and the Commissioner has cross moved (Dkt. #17) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for further proceedings.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, including treatment records reflecting status post traumatic brain injury, bipolar/depressive disorder, anxiety, attention deficit hyperactivity disorder ("ADHD"), history of minor seizures, personality disorder, and learning disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #7-2 at 12). Applying the special technique for mental impairments, the ALJ found that plaintiff has moderate limitations in understanding, remembering, and applying information; moderate limitations in interacting with others; moderate limitations in concentration, persistence and pace; and mild limitations in adapting and managing himself. (Dkt. #7-2 at 13-14).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform work at all exertional levels, with the following limitations: plaintiff can never climb ladders, ropes or scaffolds, and should have no exposure to moving machinery or unprotected heights. He is limited to simple, routine work in a low stress job with only occasional decision-making, and only occasional changes in the work setting. He is limited to superficial

contact with the public, occasional interaction with coworkers, and cannot perform tandem tasks. He is limited to occasional supervision. (Dkt. #7-2 at 15).

At the hearing, vocational expert Richard Hall testified that a hypothetical individual with this RFC could perform plaintiff's past relevant work as a general laborer, and also could perform the additional representative medium-exertion positions of material handler, packer, and kitchen helper. (Dkt. #7-2 at 17-18). The ALJ accordingly found plaintiff not disabled.

## I.     The Medical Opinions of Record

In assessing plaintiff's nonexertional (mental) impairments, the ALJ's decision specifically discussed and weighed the medical opinions of record. First, the ALJ examined the opinion of consulting psychiatrist Dr. Christine Ransom, which the ALJ gave "great" weight on the basis that he found its description of "mild" limitations to be consistent with the mental status findings of record. Second, the ALJ assessed the opinion of state agency reviewing (non-examining) psychiatrist Dr. D. Bruno, whose opinion describing "mild" limitations was given "less" weight due to plaintiff's "positive mental status findings" and testimony, both of which indicated a greater level of limitation than Dr. Bruno allegedly opined.

The ALJ next turned to the opinion of plaintiff's treating internist Dr. Christopher D'Angelo, which the ALJ gave "little" weight," finding the "marked" limitations it identified to be unsupported by unidentified "contemporaneous treatment notes" or the findings by Dr. Ransom. Finally, the ALJ referenced an opinion by state agency consultant C. Wilson, a single decision maker, whose opinion the ALJ rejected out of hand as that of a non-medical source. (Dkt. #7-2 at 16-17).

3

Plaintiff argues that the ALJ overlooked two "other source" opinions of record, by plaintiff's treating therapist, Maureen Bradley, and treating psychiatric nurse practitioner, Barbara Dahlberg, and that remand is therefore required.[1]

The Court agrees. Ms. Bradley stated on October 15, 2015, on the basis of five months of treatment visits, that plaintiff's symptoms had previously produced frequent episodes of passing out or blacking out, frequently caused the loss of work or failure to complete his education, and frequently gave rise to behaviors that interfere with activities of daily living. She further indicated that plaintiff's symptoms "occasionally" led to previous hospitalizations or emergency room visits, acute psychiatric hospitalizations, difficulties in appropriate social interaction, repetitive vigilant actions, suicide attempts, and episodes of decompensation. (Dkt. #7-7 at 261-64, 277-80). She opined that plaintiff was "very limited" (unable to function 25% or more of the time) with respect to all functional categories, including following instructions, maintaining attention and concentration for rote tasks, regularly attending to a routine, maintaining hygiene standards, and performing low stress and simple tasks, and was unable to participate in any activities other than treatment and rehabilitation. *Id.*

Ms. Dalhberg rendered an opinion on July 10, 2017, based on two psychiatric treatment visits over a six-week period. (Dkt. #7-7 at 494-97). She described plaintiff's chief complaints as anxiety and obsessive thinking, which she stated had caused "frequent" job loss and/or interference with activities of daily living, and occasional hospitalizations and inappropriate social interactions. She noted that plaintiff's concentration was good, his memory was intact, and his intelligence was

---

[1] The record also contained a letter from psychiatric Care Manager Jennifer Beavers, who stated that beginning in February 2017 through the date of her letter on February 15, 2018, she had contacted plaintiff monthly to assist in coordinating his medical, mental health and social service needs. (Dkt. #7-8 at 820). Although plaintiff argues that the ALJ's failure to mention this letter amounted to overlooking yet another opinion from an "other source," the Court observes that the letter does not purport to describe plaintiff's symptoms or limitations, and offers no opinion concerning his ability to perform any work-related function. As such, even assuming *arguendo* that the ALJ somehow erred in declining to mention Ms. Beavers' letter, such error was harmless.

4

average. Nonetheless, Ms. Dahlberg opined that plaintiff was "very limited" in the ability to carry out simple instructions, perform simple tasks, maintain attention and concentration for rote tasks, attend to a routine, and perform low stress and simple tasks. She stated that plaintiff would require a stress free, structured and supportive work environment. *Id*.

The SSA's regulations require an ALJ to "evaluate every medical opinion [he or she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c). Unless a treating source's opinion is given controlling weight, the ALJ must weigh every opinion of record considering several relevant factors, including the nature and length of the treatment relationship, whether the opinion is supported by medical signs and laboratory findings, consistency with the record as a whole, and whether the source is a specialist in the relevant area. See 20 C.F.R. §§404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Here, the ALJ did not give controlling weight to a treating physician's opinion, and was therefore required to evaluate all opinions of record. However, the ALJ's decision makes no mention of Ms. Bradley's or Ms. Dahlberg's assessments in its discussion of the opinion evidence. (Dkt. #7-2 at 16-17). As such, it appears that the ALJ may have erroneously overlooked or ignored them. This error is especially harmful because Ms. Bradley's and Ms. Dahlberg's opinions specify limitations which exceed those included by the ALJ in his RFC finding, provide some support for Dr. D'Angelo's opinion which the ALJ gave "little" weight, and contradict the opinion of Dr. Ransom which the ALJ gave "great" weight, based in part on its alleged consistency with the overall evidence of record.

Nor does the fact that Ms. Bradley (a social worker) and Ms. Dahlberg (a nurse practitioner) were not "medically acceptable sources," but rather "other sources" for purposes of the applicable

5

regulations, alter the analysis. Appropriate consideration is required for all medical opinions of record, including those from other sources, *see* SSR 06-03p, 2006 SSR LEXIS 5, and an ALJ's decision not to credit opinions from other sources must be explained. *See Franklin v. Colvin*, 2018 U.S. Dist. LEXIS 48509 at \*18-\*19 (S.D.N.Y. 2018)(while an ALJ is free not to give any weight to "the opinions of social workers or nurse practitioners . . . the ALJ must 'explain that decision'")(quoting *Canales v. Commissioner*,698 F. Supp. 3d 335, 344 (E.D.N.Y. 2010)). *See also LaFreniere v. Astrue*, 2010 U.S. Dist. LEXIS 99575 at \*19 (N.D.N.Y. 2010) ("[w]hile the ALJ was not bound to give [a treating social worker's] assessment any particular weight, he was obligated to explain his decision," and failure to do so necessitates remand); *Gillies v. Astrue*, 2009 U.S. Dist. LEXIS 36484 at \*16 (W.D.N.Y. 2009) (remand necessary where ALJ rejected nurse practitioner's opinion solely because it was not authored by an "acceptable medical source").

Because proper consideration of Ms. Bradley's and Ms. Dahlberg's opinions had the potential to alter the outcome of the ALJ's disability determination, remand is necessary in order to allow them to be addressed.

The Court further finds that the ALJ's decision not to give controlling weight to treating physician Dr. D'Angelo's opinion (Dkt. #7-9 at 953-56) was not supported by good reasons. The ALJ's discussion of the opinion made no mention of any of the factors relevant to the analysis of a treating physician opinion, except for a vague allusion to inconsistencies with "contemporaneous treatment notes." (Dkt. #7-2 at 17). This was followed by a broad parenthetical reference to three entire exhibits of record, none of which were actually "contemporaneous" with Dr. D'Angelo's March 8, 2018 opinion. The cited exhibits included: 36 pages of Ms. Bradley's treatment notes spanning a six-month period in 2015 (Dkt. #7-7 at 359-95); 287 pages of treatment records from May 2016 through October 2017 with multiple providers at the University of Rochester Medical

6

Center for, among other things, anxiety, cardiac and neurological concerns, sleep disorders, and mental health treatment (Dkt. #7-8 at 519-806); and the opinion of consulting psychiatrist Dr. Ransom (Dkt. #7-7 at 421-25).

With respect to the ALJ's reliance on inconsistencies between Dr. D'Angelo's opinion and Dr. Ransom's opinion, the Second Circuit has frequently "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination [particularly] in the context of mental illness." *Estrella*, 925 F.3d 90 at 97 (conflict between consulting physician's opinion and treating physician's opinion is not a "good reason" for minimizing the latter). Therefore, any contradiction between Dr. Ransom's opinion and Dr. D'Angelo's could not be a "good reason" for the ALJ to discount Dr. D'Angelo's opinion. To the contrary, "had the ALJ complied with the procedural mandates of the treating physician rule" in considering Dr. D'Angelo's treating physician opinion, the weight afforded to Dr. Ransom's consulting physician opinion might have been diminished. *Id*.

Remand is therefore necessary for the ALJ to reassess Dr. D'Angelo's opinion with due deference to the treating physician rule. *See e.g.*, *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (where ALJ failed to explicitly consider the relevant factors in assessing a treating physician's opinion, and did not otherwise supply "good reasons" for rejecting it, the substance of the rule is traversed and remand is appropriate); *Guarneri v. Berryhill*, 2019 U.S. Dist. LEXIS 69837 at *53-*54 (E.D.N.Y. 2019) (alleged inconsistencies between treating physicians' opinions and unspecified "clinical findings" and "mental status findings" does not rise to the level of "substantial evidence needed to undermine the treating physicians' findings")(internal quotations omitted).

Having found that the ALJ erred in his analysis of the medical opinions of record, the Court declines to address plaintiff's alternative arguments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #10) is granted, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #17) is denied. The ALJ's decision is reversed and remanded, and the ALJ is instructed to render a new decision which discusses all of the opinion evidence of record with respect to plaintiff's non-exertional limitations. Such discussion should include evaluation of the opinions of Ms. Bradley and Ms. Dahlberg, as well as reevaluation of the opinions of Dr. D'Angelo (to include recontacting of Dr. D'Angelo for clarification if and as necessary), Dr. Ransom and Dr. Bruno, with due deference to the treating physician rule and a detailed discussion of all of the factors relevant to the consideration and weighing of opinion evidence.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       August 14, 2020.